Filed 10/13/25  P. v. Castaneda CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICTOR MANUEL CASTANEDA,<br><br>    Defendant and Appellant. | F087793<br><br>(Super. Ct. No. 05CM9002-002)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Kendra Weber, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

On November 8, 2006, a jury convicted appellant Victor Manuel Castaneda of second degree murder (Pen. Code, § 187, subd. (a),[1] count 1)[2] and conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a), count 2). As to count 2, the jury also found true the gang-murder special circumstance (§ 190.2, subd. (a)(22)) and gang enhancement (§ 186.22, subd. (b)(4)). Subsequently, based on the gang-murder special circumstance finding in count 2, the trial court sentenced Castaneda to an indeterminate term of life without the possibility of parole, plus a consecutive 15-year term for the gang enhancement.

On December 19, 2018, our Supreme Court issued the following order to show cause regarding the gang-murder special circumstance (§ 190.2, subd. (a)(22)) finding:

> "The Secretary of the Department of Corrections and Rehabilitation is ordered to show cause returnable before the Kings County Superior Court, when the matter is placed on calendar, why [Castaneda] is not entitled to a full resentencing hearing because components of his sentence, including his term of life without the possibility of parole for conspiracy, are unauthorized. (See Attorney General's Informal Response filed July 25, 2018, and Supplemental Informal Response filed on October 23, 2018; *People v. Navarro* (2007) 40 Cal.4th 668, 681; *People v. Hernandez* (2003) 30 Cal.4th 835, 864–870; *People v. Lopez* (2005) 34 Cal.4th 1002; *People v. Palacios* (2007) 41 Cal.4th 720; see also Pen. Code § 12022.53, subd. (h). The return is to be filed on or before January 18, 2019." (*In re Castaneda* (Dec. 19, 2018, S247219) [nonpub. opn.].)

On March 22, 2019, the Kings County Superior Court ordered a full resentencing.

Thereafter, on May 14, 2019, Castaneda filed a petition for resentencing pursuant to former section 1170.95 (now § 1172.6).[3] The superior court summarily denied the petition on the ground Castaneda aided and abetted the murder and possessed the

---

[1]     All further references are to the Penal Code unless otherwise indicated.

[2]     As discussed below, the jury acquitted Castaneda of first degree murder.

[3]     Former section 1170.95 has been renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

2.

necessary malice aforethought. Castaneda filed a timely notice of appeal. Currently, resentencing has been postponed until this appeal is resolved.

In his direct appeal, Castaneda contends "[t]he [jury] instructions permitted, and the prosecutor urged, the jury to convict [him] of murder based on Valladares' act of shooting [the victim] and his intent to kill." Therefore, "the case must be remanded for an evidentiary hearing because the record does not conclusively refute the petition's allegations of eligibility." (Capitalization & boldface omitted.) We agree.

Accordingly, the superior court's order denying Castaneda's petition for resentencing pursuant to section 1172.6 as a matter of law is vacated, and the matter is remanded to the trial court with directions to conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d).

Further, during the pendency of this appeal, Castaneda also filed a petition for writ of habeas corpus with this court. In the petition, Castaneda contends "an erroneous jury instruction permitted the jury to convict [him] of conspiracy to commit murder without finding intent to kill." (Capitalization & boldface omitted.) Based on this court's disposition, coupled with the fact Castaneda is already entitled to a full resentencing due to the superior court's March 22, 2019, order, we defer any issue(s) raised in his petition for writ of habeas corpus to the superior court to resolve. (*Griggs v. Superior Court* (1976) 16 Cal.3d 341, 347 ["[i]f the challenge is to a particular judgment or sentence, the petition should be transferred to the court which rendered judgment"].) Therefore, Castaneda's petition for writ of habeas corpus will be denied without prejudice by separate order.

<u>**PROCEDURAL BACKGROUND**</u>

**I.      Underlying Facts and Convictions**

In our nonpublished opinion, *People v. Castaneda* (May 1, 2009, F052642) (*Castaneda I*),**4** we previously summarized the facts and procedural background regarding Castaneda's convictions as follows:

**A.      *Facts***

"On August 28, 2004, at approximately 5:30 a.m., Marcos Villegas, a Norteno gang member, was fatally shot outside an Avenal apartment complex while waiting for a ride to work.  The shooting was in retaliation for the August 20, 2004, shooting of Ruben Gonzalez, a nephew of Sureno gang member Jose Valladares, who went by the moniker 'Little Man.'

"Valladares was the gunman who shot Villegas.  Castaneda, a Sureno gang member, drove a pickup to Coalinga where another gang member, Joe Diaz, disposed of the gun Valladares used in the shooting and the clothes he wore during the shooting." (*Castaneda I, supra*, F052642.)

**B.      *Procedural Background***

"A jury convicted Victor Manuel Castaneda of second degree murder, a lesser included offense of murder (Pen. Code, § 187, subd. (a); count 1), and conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a); count 2).  As to both counts, the jury found true allegations the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)); that a principal personally discharged a firearm (§ 12022.53, subds. (d)–(e)); and that a principal personally caused great bodily injury or death to a person (§ 12022.53, subds. (d)–(e)); and found true as to count 2 that the murder was carried out to further the activities of a criminal street gang (§ 190.2, subd. (a)(22)).

---

**4**      On July 25, 2024, this court, on its own motion "t[ook] judicial notice of the record on appeal" in *Castaneda I*.  We provide these facts for background purposes only and do not rely on these facts in resolving the issues presented in this appeal.  (See § 1172.6, subd. (d)(3).)

Castaneda was sentenced to life without the possibility of parole on count 2, plus two consecutive 15-years-to-life terms for count 1 and one section 186.22, subdivision (b)(4) criminal street gang enhancement, and one consecutive 25-years-to-life term for the section 12022.53, subdivisions (d) and (e) enhancement." (*Castaneda I, supra*, F052642, fn. omitted.)

## II.    Section 1172.6 Petition

On May 14, 2019, Castaneda, in pro. per., filed a petition for resentencing his murder convictions pursuant to section 1172.6.  In the form petition, Castaneda stated a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of first or second degree murder at trial and he could not now be convicted of first or second degree murder because of the changes made to sections 188 and 189 effective January 1, 2019.  (Stats. 2018, ch. 1015, §§ 2, 3.) Castaneda further stated he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; or that he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony.  Castaneda further stated the victim was not a peace officer acting in the performance of his or her duties.  Lastly, Castaneda stated he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine and could not now be convicted of murder because of the changes made to section 188 effective January 1, 2019.

On August 22, 2019, the People filed an opposition to the petition for resentencing "because [Castaneda] participated in a conspiracy to commit murder, and was not convicted solely under a theory of felony murder or natural and probable consequences." (Boldface & underscoring omitted.)  The People further argued that Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) is unconstitutional.  However, this court has

5.

since held that Senate Bill 1437 was a proper exercise of legislative authority. (*People v. Nash* (2020) 52 Cal.App.5th 1041, 1053 [Holding that Sen. Bill 1437 does not violate Props. 7, 115, or 9,[5] or the separation of powers doctrine].)

On September 13, 2019, Castaneda's counsel filed a reply to the People's opposition. Specifically, he argued that Castaneda's act of "driving an individual days prior to the shooting makes [him] no more liable for the murder than a third party Uber driver who may have given an eventual murdere[r] a ride" and that "a conspiracy can proceed under a natural and probable consequences theory [and] [a]s such, [section 1172.6] allows for review of [his] sentence."

Thereafter, on March 15, 2024, the superior court conducted a hearing on Castaneda's section 1172.6 resentencing petition. Based on the pleadings and transcripts of the trial, including the jury instructions and closing arguments, the superior court denied the petition for resentencing. Specifically, the superior court ruled as follows:

> "The court does find that based on the jury instructions and closing arguments that there was not an improper theory proffered in either and the theory of liability was based on as to both counts conspiracy and direct aider and abettor and not under felony murder natural probable consequences theories. The court does not find based on what is before the court on the record that there [is] a prima [facie] showing to proceed to resentencing under [section] 117[2.6]."

A timely appeal followed.

## III. Petition for Writ of Habeas Corpus (Case No. F089125)

Subsequently, during the pendency of this appeal, Castaneda filed a petition for writ of habeas corpus with this court. In the petition, Castaneda contends "an erroneous jury instruction permitted the jury to convict [him] of conspiracy to commit murder without finding intent to kill." (Capitalization & boldface omitted.) Specifically, he

---

[5] Proposition 7, as approved by voters in the November 7, 1978, General Election; Proposition 115, as approved by voters in the June 5, 1990, Primary Election; Proposition 9, as approved by voters in the November 4, 2008, General Election.

argues the jury was erroneously instructed on conspiracy to commit *second* degree murder[6] and that this error was not harmless beyond a reasonable doubt under the standard articulated in *Chapman v. California* (1967) 386 U.S. 18. The Attorney General filed an informal response wherein he concedes error regarding the improper jury instruction, but nonetheless argues the error was harmless beyond a reasonable doubt. Further, the Attorney General argues the petition for writ of habeas corpus is procedurally barred because it is both untimely and successive.

## DISCUSSION

Castaneda contends the case must be remanded for a section 1172.6, subdivision (d) evidentiary hearing "because the record does not conclusively refute the petition's allegations of eligibility." (Capitalization & boldface omitted.) We agree.

**A.   Additional Factual Background**

**1.   *Jury Instructions***

The trial court instructed the jury with the conspiracy liability instruction (CALCRIM No. 417) as follows:

> "A member of a conspiracy is criminally responsible for the crimes that he or she conspires to commit, no matter which member of the conspiracy commits the crime.
>
> "A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a *natural and probable consequence of the common plan or design of the conspiracy.* This rule applies even if the act was not intended as part of the original plan. Under this rule, a defendant who is a member of the conspiracy does not need to be present at the time of the act.

---

[6]   "[T]here is no crime of 'conspiracy to commit second degree murder[;]' [r]ather, 'all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder.'" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641.) This is due to the fact "[c]onspiracy to commit murder may be based only on express malice, i.e., an intent to kill. (See *People v. Gonzalez* (2012) 54 Cal.4th 643, 653 ['Express malice is an intent to kill'].)" (*Id.* at p. 642.) An instruction that indicates an individual can be found guilty of conspiracy to commit second degree murder is error. (*Id.* at p. 642.)

"*A natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

"A member of a conspiracy is not criminally responsible for the act of another member if that act does not further the common plan or is not a natural and probable consequence of the common plan.

"To prove that the defendant is guilty of the crimes charged in Counts one and two, the People must prove that:

"1.     The defendant conspired to commit one of the following crimes:  [section] 187 murder in the first *or second degree* and;

"2.     A member of the conspiracy committed one of more of the overt acts listed in [CALCRIM No.] 563 to further the conspiracy .…" (Italics added.)[7]

As it relates to the conspiracy to commit murder, the trial court instructed the jury that "[t]o decide whether the defendant and one or more of the other alleged members of the conspiracy intended to commit murder, please refer to [CALCRIM Nos.] 520 and 521 which define that crime[ CALCRIM No. 563]."

CALCRIM No. 520 was instructed in relevant part as follows:

"There are two kinds of malice aforethought, express malice *and implied malice*. Proof of either is sufficient to establish the state of mind required for murder.

"The defendant acted with express malice if he unlawfully intended to kill.

"The defendant acted with *implied malice* if:

---

[7]     The trial court omitted the third element under CALCRIM No. 417, which states the following:

"AND

"3. _____ *<insert nontarget offense[s]>* (was/were) [a] natural and probable consequence[s] of the common plan or design of the crime that the defendant conspired to commit." (CALCRIM No. 417)

"1.     He intentionally committed an act;

"2.     The natural consequences of the act were dangerous to human life;

"3.     At the time he acted, he knew his act was dangerous to human life;

"AND

"4.     He deliberately acted with conscious disregard for human life."  (Italics added.)

### 2.     *Prosecutor's Closing Argument*

In discussing the elements of murder, the prosecutor argued that Castaneda's malice *could* be based on Valladares's intent to kill.  Specifically, he stated the following:

> "The elements of murder in [CALCRIM No.] 520, that's what that number is for, [CALCRIM No.] 520 in your instruction, an act that causes death of a person, Little Man[8] shot another person.  That definitely caused the death.  Defendant doesn't have to be the shooter to be guilty of murder, not when he's aiding and abetting and not when he's a co-conspirator.  He doesn't have to—then there's malice aforethought.… [M]alice aforethought is an unlawful intent to kill.  That was clear and pervasive since August 20th, [2004,] when they started planning this.  Everybody intended to kill.  Oh, except him.  He thought they were all joking, which is completely unreasonable under the circumstances.
>
> "*So malice aforethought is definitely there, because we know at least Little Man had the intent to kill*."  (Italics added.)

The prosecutor continued:

> "Conspiracy to commit murder.  A few elements there in [CALCRIM No.] 563.  We had intent to agree and did agree to commit murder.  It's implicit, it's well known throughout this whole week that's what everybody said.  How many times do you have to say kill a Norteno or kill or shoot does it come clearer?  *Intent to murder by at least one conspirator.  That's all it takes is one person.  Little Man intended to kill, just one*.  Every one of them intended to kill when they went to the location.  Whether they succeeded is not necessary for conspiracy, because any

---

**8**     As stated *ante*, Valladares went by the gang moniker of "Little Man."

conspira[tor] who does an overt act bind[s] them all to the guilt of this crime." (Italics added.)

### 3. *Verdicts*

As indicated above, the jury found Castaneda not guilty of first degree murder (§§ 187, subd. (a), 189) as to count 1, but found him guilty of second degree murder (§ 187, subd. (a)). The jury also found true a gang (§ 186.22, subd. (b)(4)) and firearm (§ 12022.53, subds. (d), (e)(1))[9] enhancement.

As to count 2, the jury found Castaneda guilty of conspiracy to commit murder (§§ 182, subd. (a)(1), 187), and found true a gang enhancement (§ 186.22, subd. (b)(4)) and the gang-murder special circumstance (§ 190.2, subd. (a)(22)).

## B. Applicable Law

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869 (*Wilson*).) Specifically, as it relates to the natural and probable consequences doctrine, our Supreme Court in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) stated the following:

> "Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. [Citation.] 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' [Citation.] One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine.

---

[9] "[A]n enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*).)

10.

[Citation.] '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." [Citation.] The accomplice need not actually foresee the nontarget offense. "Rather, liability '"is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted."'" … The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime. [Citation.] Senate Bill 1437 ended this form of liability for murder." (*Curiel*, *supra*, 15 Cal.5th at p. 449.)

Senate Bill 1437 also enacted section 1172.6, which "created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) amended what is now section 1172.6 to provide that a person convicted of "attempted murder under the natural and probable consequences doctrine" is eligible for relief. (*Id.*, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

"Under section 1172.6, the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' made by Senate Bill 1437. [Citation.] The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief. [Citation.] 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]' [Citation.] Otherwise, the court must issue an order to show cause [citation] and hold an evidentiary hearing …." (*Wilson, supra*, 14 Cal.5th at p. 869, fn. omitted.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for

section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) At this state of the proceedings, the court "'should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]" (*Ibid*.) If the petitioner makes a prima facie showing of eligibility, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Curiel*, *supra*, 15 Cal.5th at p. 460.) "'"However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"'" (*Ibid.*)

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage." (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

**C.     Analysis**

Castaneda argues that as to his conspiracy conviction in count 2, "the instructions did not require [an] intent to kill, and the prosecutor invited the jury to convict [him] of murder based on Valladares' intent to kill." However, the Attorney General contends "the trial court ruled correctly that [Castaneda] was ineligible for relief as a matter of law because [he] was convicted upon a conspiracy to commit murder theory and not under theories of felony murder or natural and probable consequences." We evaluate the jury instructions, the prosecutor's arguments, and jury verdicts to determine whether Castaneda made a prima facie showing of entitlement to relief.

At the outset, notwithstanding the Attorney General's position, the jury was instructed with the natural and probable consequences doctrine. The trial court instructed the jury that "[a] member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and *that act is a natural and probable consequence of the common plan or design of the conspiracy*." (Italics added.) We find the Second District, Division One's decision in *Offley* instructive. In *Offley*, the appellate court concluded "the existence of an enhancement

12.

under section 12022.53, subdivision (d) does not show that a defendant acted with malice aforethought … [and] therefore does not establish as a matter of law that [the petitioner] could still be convicted of murder under the new law and is ineligible for relief under section [1172.6]." (*Offley*, *supra*, 48 Cal.App.5th at p. 598, fn. omitted.) Specifically, the *Offley* court found that because "[t]he trial court instructed the jury on the natural and probable consequences doctrine as part of its instruction on conspiracy liability," "we cannot rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting [the petitioner]." (*Id*. at p. 599.) Further, "[t]he prosecutor argued that the jury could convict the defendants on the basis of this instruction." (*Ibid*.) Overall, "[t]he jury might have concluded that [the petitioner] intended to take part in a conspiracy to commit assault with a firearm, or to fire into an occupied vehicle, with the aim of either injuring or merely frightening [the victim] [and thus,] [t]he jury could have then concluded that [the victim's] death was the natural and probable consequence of the conspiracy and convicted him of murder without finding beyond a reasonable doubt that he acted with malice aforethought." (*Ibid*.)

Similar to the jury in *Offley*,[10] the jury in this case was provided an analogous instruction regarding conspiracy liability, which the *Offley* court found was a flawed instruction. Under this flawed instruction, the jury could have found Castaneda intended to only participate in a conspiracy to commit a nonhomicidal act and that the victim's death was the natural and probable consequence of that conspiracy without a finding of

---

**10**     Specifically, the jury in *Offley* was instructed as follows:

"'A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime.'" (*Offley*, *supra*, 48 Cal.App.5th at p. 599.)

an intent to kill or conscious disregard to human life.[11] This flawed instruction was further exasperated by the prosecutor's closing arguments. The prosecutor in this case argued that "malice aforethought is definitely there, because … *at least Little Man*[, *i.e., Valladares*,] *had the intent to kill*" and that an "[i]ntent to murder by at least one conspirator. *That's all it takes is one person. Little Man intended to kill, just one.*" (Italics added.) This permitted the jury to find Castaneda guilty of conspiracy to murder if they concluded that Valladares *alone* had the intent to kill—irrespective of Castaneda's intent.

Further, the verdict itself provides evidence the jury may have imputed malice to Castaneda. Specifically, the jury acquitted Castaneda of first degree murder (§§ 187, subd. (a), 189, count 1)—finding that he did not have express malice. This demonstrates how the jury could have convicted Castaneda of conspiracy, which requires express malice (*Beck and Cruz, supra*, 8 Cal.5th at p. 642), but at the same time acquit him of first degree murder (*id.* at p. 641 ["'all conspiracy to commit murder is necessarily conspiracy to commit *premeditated and deliberated first degree murder*'" (italics added)]). These instructions, coupled with the prosecutor's closing arguments, leaves open the possibility the jury was confused when rendering its verdict.

Finally, the Attorney General argues "the jury found [Castaneda] intended to kill when i[t] found the gang murder special circumstance true after receiving CALCRIM No. 763." However, as the Attorney General concedes, this intent to kill finding "does

---

**11**    As indicated above, Castaneda filed a writ of habeas corpus with this court wherein he argues this "erroneous jury instruction permitted the jury to convict [him] of conspiracy to commit murder without finding intent to kill." (Capitalization & boldface omitted.) The Attorney General concedes error. Notwithstanding the relevance of the contents of a habeas petition as it relates to the denial of a section 1172.6 petition, this clear error is relevant to the extent it demonstrates juror confusion during deliberations. (See *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1268 ["Given the brevity of these comments and the highly confusing nature of the instructions, we are persuaded there was more than a possibility that the jury construed the instructions to permit a conviction based on imputed malice."].)

14.

not by itself establish any valid theory of liability." (*Curiel, supra*, 15 Cal.5th at p. 463.) In *Curiel*, gang members Curiel and his codefendant approached a group of men outside a convenience store and engaged in a verbal confrontation. (*Id*. at pp. 441–442.) The situation escalated and a physical altercation ensued between the codefendant and one of the men in the group. The codefendant shot and killed the man, and he and Curiel fled the scene together. (*Id*. at p. 442.)

At trial, the prosecutor argued that Curiel was guilty of murder either (1) as a direct aider and abettor acting with implied or express malice who instigated the confrontation and acted as a backup to his fellow gang member (the codefendant), or (2) under the natural and probable consequences doctrine as an aider and abettor of disturbing the peace and of carrying a concealed firearm by a gang member. (*Curiel, supra*, 15 Cal.5th at pp. 445 446.) The jury was instructed on the natural and probable consequences doctrine, but was also instructed regarding the gang-murder special circumstance, which stated the following:

> "'To prove that this special circumstance is true, the People must prove that: [(1)] the defendant intended to kill; [(2)] at the time of the killing the defendant was a member in a criminal street gang; and [(3)] the murder was carried out to further the activities of the criminal street gang.'" (*Curiel, supra*, 15 Cal.5th at p. 447.)

The jury convicted Curiel of first degree murder and found the gang-murder special circumstance true. (*Curiel, supra*, 15 Cal.5th at p. 447.)

Our Supreme Court held the jury finding of an intent to kill for the gang-murder special circumstance finding was properly given preclusive effect. (*Curiel*, *supra*, 15 Cal.5th at pp. 441, 460.) However, this special circumstance finding did not necessarily establish all the requisite elements of aiding and abetting murder, is now required by the change in the law. Specifically, "a finding of intent to kill … is only one element. It does not by itself establish any valid theory of liability." (*Id*. at p. 463.) The court elaborated as follows:

"[Section 188, subdivision (a)(3)] did not simply 'add the element of malice aforethought' to existing theories of murder liability. [Citation.] It eliminated the doctrine of natural and probable consequences in its entirety: 'By limiting murder liability to those principals who personally acted with malice aforethought, section 188[,subdivision ](a)(3) eliminates what was the core feature of natural and probable consequences murder liability: the absence of a requirement that the defendant personally possess malice aforethought. As a result, the most natural reading of Senate Bill 1437's operative language is that it eliminates natural and probable consequences liability for first and second degree murder.' [Citation.]

"Thus, after the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting. [Citation.] And it requires a different, valid theory *because of* the changes to section 188 in Senate Bill 1437. It was those changes that persuaded this court that the doctrine of natural and probable consequences could no longer support murder liability, with or without malice. [Citation.] Consequently, a petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' [citation] puts at issue all elements of the offense under a valid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 462.)

Therefore, in *Curiel*, "[b]ecause the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that Curiel knew that [the codefendant] intended to commit one of the underlying target offenses and that Curiel intended to aid him in *that* offense, not murder. Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life. While the jury separately found Curiel intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder." (*Curiel*, *supra*, 15 Cal.5th at p. 468.)

Similar to *Curiel*, the jury verdicts in this case do not reflect all the factual findings necessary to support a murder conviction under a direct aiding and abetting theory. Although the jury convicted Castaneda of second degree murder and conspiracy to murder, the jury instructions permitted the jury to convict Castaneda of both murder

and conspiracy to murder based on the natural and probable consequences of a conspiracy. Overall, the verdicts in this case do not reflect a finding, *as a matter of law*, that Castaneda knew Valladares intended to shoot or kill the victim, or that he intentionally aided or encouraged the shooting.

Again, our Supreme Court has emphasized "the prima facie inquiry … is limited" and "the 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, 11 Cal.5th at pp. 971, 972.) Because there is a *possibility* Castaneda is entitled to section 1172.6 relief, he is entitled to an evidentiary hearing pursuant to section 1172.6, subdivision (d). Accordingly, the superior court must issue an order to show case and hold an evidentiary hearing (§ 1172.6, subds. (c) , (d)). We offer no opinion as to whether Castaneda will succeed on the merits at his section 1172.6, subdivision (d), evidentiary hearing.

## DISPOSITION

The superior court's order is reversed, and the matter is remanded for the trial court to issue an order to show cause and conduct an evidentiary hearing pursuant to section 1172.6, subdivisions (c) and (d).[12]

MEEHAN, J.

WE CONCUR:

HILL, P. J.

LEVY, J.

---

[12] In light of the disposition in this case, Castaneda's petition for writ of habeas corpus, filed in this court on January 3, 2025, in case No. F089125, is moot and is denied by separate order.

17.